IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:12-CV-152-FL

| | | |
|---|---|---|
| EDDIE BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Eddie Bennett ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 19, 21). Each party filed a memorandum in support of its motion (D.E. 20, 22). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Minute Entry dated 15 Jan. 2013). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 1 December 2008, alleging a disability onset date of 12 July 2008. Transcript of Proceedings ("Tr.") 11. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 11. On 31 August 2010, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 22-43. A vocational

expert testified at the hearing. Tr. 42-43. In a written decision dated 7 October 2010, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB. Tr. 11-17. Plaintiff timely requested review by the Appeals Council. Tr. 7. The Appeals Council admitted additional exhibits, consisting of a brief from plaintiff's counsel (Tr. 180-81) and medical records (Tr. 282-380), but denied the request for review on 20 June 2012. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 27 July 2012, pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 1)).

**B.     Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

C.    Findings of the ALJ

Plaintiff was 51 years old on the alleged onset date of disability and 53 years old on the date of the administrative hearing.  Tr., *e.g.*, 25.  He has a high school education and past work as a doffer[1] and concrete pay loader.  Tr. 17 ¶ 6; 35, 37-38.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability.  Tr. 13 ¶ 2.  At step two, the ALJ found that plaintiff had the following medically determinable impairments that are severe within the meaning of the Regulations:  hypertension, tobacco abuse, gastroesophageal reflux disease, hyperlipidemia, and borderline intellectual functioning.  Tr. 13 ¶ 3.  At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings.  Tr. 13 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a full range of work at all exertional levels.  Tr. 13 ¶ 5.  Based on this RFC, the ALJ found at step four that plaintiff was capable of performing his past relevant work as a doffer and concrete pay loader.  Tr. 17 ¶ 6.  The ALJ accordingly concluded that plaintiff was not disabled.  Tr. 17 ¶ 7.

II.    DISCUSSION

A.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Unless the court finds that the Commissioner's decision is not supported by substantial evidence

---

[1] As found by the ALJ, this job involves doffing fabric off of spools in a textile plant.  Tr. 17 ¶ 6 (citing *Dictionary of Occupational Titles* ("DOT"), occupational code no. 689.686-022); *see also* Tr. 37-38.

or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently

explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131

F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible

without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*,

715 F.2d 148, 150 (4th Cir. 1983).

### B. Plaintiff's Contentions

Plaintiff contends that the ALJ erred with respect to his listing determination, RFC

determination, non-application of the Medical-Vocational Guidelines, and development of the

record. Plaintiff's contentions are addressed in turn below.

### C. ALJ's Determination on Listings 12.05B and C

The ALJ found at step three that plaintiff "does not have an impairment or combination

of impairments that meets or medically equals one of the listed impairments in [the Listings]."

Tr. 13 ¶ 4. Although the ALJ does not discuss any particular listings or otherwise elaborate on

this finding, its plain meaning is that it encompasses all listings, including Listings 12.05B and

C. Plaintiff argues that the ALJ's determination is erroneous because, as a matter of law, he does

meet Listings 12.05B and C. The court finds no error in the ALJ's determination.

The listings consist of impairments, organized by major body systems, that are deemed

sufficiently severe to prevent a person from doing not only any substantial gainful activity, but

any gainful activity at all. 20 C.F.R. § 404.1525(a). Therefore, if a claimant's impairments meet

a listing, that fact alone establishes that the claimant is disabled. *Id.* § 404.1520(d). An

impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493

U.S. 521, 530 (1990).[2]

---

[2] Even if an impairment does not meet the criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 404.1525(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). Plaintiff does not

6

To meet Listing 12.05B,[3] a claimant must satisfy two requirements. First, he must first satisfy the introductory diagnostic description for mental retardation. *See* Listing 12.00A. Specifically, the claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, before the age of 22. Listing 12.05. General intellectual functioning is defined by the intelligence quotient ("IQ") obtained using one or more of the standardized, individually administered intelligence tests. *See Diagnostic and Statistical Manual of Mental Disorders* 41 (4th ed., Text Revision (2000) ("DSM-IV-TR")).[4] Adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM-IV-TR 42.

---

contend that his intellectual impairment medically equals Listings 12.05B or C. In any event, it would not for the same reasons that it does not meet these listings.

[3] Listing 12.05 reads in relevant part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

>     . . . .

> B. A valid verbal, performance, or full scale IQ of 59 or less;

> Or

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

Listing 12.05B & C.

[4] "The DSM is widely recognized as the authoritative reference used in diagnosing mental disorders." *United States v. Wooden*, 693 F.3d 440, 452 n. 4 (4th Cir. 2012) (internal quotation marks omitted). "The definition of M[ental] R[etardation] we use in our listings is consistent with, if not identical to, the definitions of MR used by the leading professional organizations," including the definition in the DSM. *Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed. Reg. 20018–01, 2002 WL 661740, at 20022 (Soc. Sec. Admin. 24 Apr. 2002).

Second, the claimant must show that his retardation is at the requisite level of severity. Specifically, the claimant must have a "valid verbal, performance, or full scale IQ of 59 or less." Listing 12.05B.

To meet Listing 12.05C, a claimant must meet three requirements. First, as with Listing 12.05B, he must satisfy the introductory diagnostic description for mental retardation. The two further requirements relating to the severity of the retardation are that he must have both a "valid verbal, performance, or full scale IQ of 60 through 70" and "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Listing 12.05C.

With respect to the diagnostic description of mental retardation, plaintiff argues that the manifestation of his low intellectual functioning before age 22 is shown by the Slosson IQ scores of 51 and 57 he obtained in 1972 when he was age 15. Tr. 239, 269. Although plaintiff does not explain how he satisfies the severity requirement for Listing 12.05B, the apparent rationale is that he obtained a verbal comprehension score of 58 on the Weschler Adult Intelligence Scale ("WAIS") on 5 February 2009 during a clinical examination by Robert Radson, M.S.[5] Tr. 239, 269. Plaintiff contends he meets the severity requirements for Listing 12.05C on the basis of the IQ scores from 1972 or, alternatively, the full-scale score of 64 he obtained in the evaluation by Mr. Radson, and the purported existence of additional work-related limitations in exertional level and visual acuity.

Here, it is apparent that the ALJ determined that plaintiff did not meet Listing 12.05B or C on the grounds that he fails to satisfy the diagnostic description of mental retardation. One ground is the ALJ's finding at step two that plaintiff has borderline intellectual functioning.

[5] Although no records from Mr. Radson appear in the record, a thorough summary of his evaluation of plaintiff are set out in forms completed by the two consulting nonexamining psychologists. Tr. 225, 239, 269.

Borderline intellectual functioning involves a lesser degree of intellectual deficiency than mental retardation. *See generally* DSM-IV-TR 48, 740.

In addition, it is apparent that the ALJ did not deem plaintiff to have the level of deficits in adaptive functioning required by the diagnostic description. He found, for example, as follows:

> During a telephone conversation with Social Security Administration personnel on December 17, 2009, the [plaintiff] stated that he could read and understand parts of what he reads in a car magazine . . . .
> . . . .
> The [plaintiff] completed high school and he took auto mechanic courses at a community college.
> . . . .
> The [plaintiff] has a long work history with earnings at the substantial gainful activity level. He is mentally capable of planning and executing a broad range of daily activities. He shops, drives, cooks, manages his finances, and provides care to his mother.
> . . . .
> The [plaintiff] interacts appropriately during medical examinations. There is no evidence of difficulty dealing with the public when shopping and attending church. He is able to maintain an intimate relationship with a girlfriend. He engages in activities with his brother and visits with others by telephone.

Tr. 15 ¶ 5; 16 ¶ 5.

As to Listing 12.05C, it is also evident that, contrary to plaintiff's contention, the ALJ found him not to have a physical impairment imposing an additional and significant work-related limitation of function. This determination is apparent from the ALJ's finding that plaintiff had no exertional or other physical limitations on his RFC and that he could perform his past relevant work. *Cf. Flowers v. U.S. Dept. of Health and Human Servs.*, 904 F.2d 211, 214 (4th Cir.1990) ("In this circuit, we follow the rule that if a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § 12.05(C).").

Substantial evidence supports the ALJ's determination that plaintiff does not meet Listing 12.05B or C. This evidence includes plaintiff's two IQ scores above 70, which are in the range for borderline intellectual functioning, namely, 71 to 84. *See* DSM-IV-TR 740. Further, examining evaluator Mr. Radson found that plaintiff was capable of simple routine, repetitive tasks ("SRRTs"), notwithstanding his low IQ scores. Tr. 225, 239, 269; *see generally* 20 C.F.R. § 404.1527 (setting out standards for evaluating opinion evidence).

Additionally, consulting nonexamining psychologist Richard H. Cyr-McMillon, Ph.D. found in a Psychiatric Review Technique form (Tr. 227-40), dated 16 February 2009, that plaintiff did not meet Listing 12.05. Tr. 231. Instead, in a Mental RFC Assessment form (Tr. 223-26) of the same date, he agreed with Mr. Radson's conclusion that plaintiff was capable of SRRTs. Tr. 225.

Consulting nonexamining psychologist Sharon J. Skoll, Ph.D. also found in a Psychiatric Review Technique form (Tr. 257-70), dated 19 May 2009, that plaintiff did not meet Listing 12.05. Tr. 261. And like Dr. Cyr-McMillon, she agreed with Mr. Madson that plaintiff was capable of SRRTs, citing specifically the fact that he "cares for his mother, prepares meals, manages money, shops and drives." Tr. 269. The ALJ stated that he gave "great weight" to the opinion that plaintiff could perform SRRTs, noting some of the considerations quoted above, along with the absence of credible contradictory evidence and the observation by Mr. Radson that plaintiff could understand and follow instructions.[6] Tr. 16 ¶ 5 (citing Tr. 269).

Among Mr. Radson, Dr. Cyr-McMillon, and Dr. Skoll, only one, Dr. Skoll, definitively determined plaintiff to have mental retardation. Tr. 261. And even she found that his retardation was only mild (Tr. 261) and, as indicated, that it did not prevent him from performing SRRTs.

---

[6] In making this finding, the ALJ alludes to Mr. Radson as a physician. *See* Tr. 16 ¶ 5. The court finds the error harmless.

Mr. Radson found that it was possible, but not certain, that plaintiff had mental retardation.[7]  Tr. 239, 269.  Dr. Cyr-McMillon expressly rejected a diagnosis of mental retardation:  "Low IQ scores but adaptive skills too high to support life-long [mental retardation]."  Tr. 228.

Statements by plaintiff during visits in June and August 2010 to his primary care provider (Tr. 276, 278) and a written report provided by his brother (Tr. 157-64), all of which the ALJ cited (*see* Tr. 15 ¶ 5), substantiate that plaintiff can perform a broad range of activities of daily living.  The ALJ summarized the brother's statement as follows:

> The [plaintiff's] brother stated that he and the [plaintiff] fish and ride around. He further stated that the [plaintiff] uses a riding mower, washes clothes and hangs them, drives, shops, handles his finances, watches television, visits by telephone, and attends church. He added that the [plaintiff] lives with his mother, watches over her, and prepares their food daily . . . .

Tr. 15 ¶ 5.

As detailed in the next section, substantial evidence supports the ALJ's determination that plaintiff has an RFC sufficient to enable him to perform his past relevant work and thereby the ALJ's implicit determination regarding Listing 12.05C that plaintiff does not satisfy the requirement for a physical impairment imposing an additional and significant work-related limitation of function.

The court concludes that the ALJ committed no error in not finding that plaintiff meets Listings 12.05B or C.  It accordingly rejects plaintiff's challenge to this portion of the ALJ's decision.

### D.    ALJ's Determination of Plaintiff's RFC

Plaintiff contends that the ALJ's RFC determination that he could perform a full range of work at all exertional levels is erroneous.  Instead, plaintiff contends that the ALJ should have

---

[7] Mr. Radson indicates the possible nature of this (and other diagnoses) by the term "rule out."  *See, e.g*., Carlton E. Munson, Ph.D., *The Mental Health Diagnostic Desk Reference* 78–79 (2d ed. 2001).

found him restricted to work at the sedentary exertional level[8] subject to various mental and other limitations.

Plaintiff's focus on the propriety of the ALJ's RFC determination is misplaced. The salient inquiry is whether there is substantial evidence that plaintiff had the RFC to perform his past relevant work even if such RFC was more limited than the RFC the ALJ found plaintiff to have. In the event there is substantial evidence that plaintiff had the RFC to perform his past relevant work, any error by the ALJ in his RFC determination in attributing to plaintiff greater capabilities than required for his past relevant work would be harmless. *See, e.g., Hunter v. Apfel*, 321 Fed. Appx. 789, 793 (10th Cir. 2009); *Bryant v. Astrue*, No. 1:10-cv-00197-JMS-DML, 2010 WL 4666054, at *5 (S.D. Ind. 4 Nov. 2010); *Azami v. Apfel*, 24 F. Supp. 2d 1007, 1010 (C.D. Cal. 1998). The court finds that the ALJ committed no error in finding plaintiff able to perform his past relevant work.

Past relevant work is defined as work that a claimant has done in the past 15 years that was substantial gainful activity and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). A claimant is deemed able to perform his past relevant work if he has the RFC to meet the physical and mental demands of such work, "either as the claimant actually performed it or as generally performed in the national economy." *Id.* § 404.1560(b)(2); *see also* Soc. Sec. Ruling 82-61, 1982 WL 31387, at *1 ¶¶ 2, 3 (1982).

---

[8]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); *see also Dictionary of Occupational Titles* ("DOT") (U.S. Dep't of Labor 4th ed. rev. 1991), http://www.oalj.dol.gov/libdot.htm (last visited 24 June 2013), app. C § IV.c, def. of "Sedentary Work." "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

As indicated, plaintiff had past relevant work as a doffer, apparently from about 1998 to 2001 (*see* Tr. 120-21), and as a concrete pay loader, apparently from about 2002 to 2008 (Tr. 119-20). *See* Tr. 17 ¶ 6; 119-21; *but see* Tr. 132. Using the DOT, the ALJ found plaintiff's job as a doffer to be unskilled work at the medium exertional level.[9] Tr. 17 ¶ 6 (citing DOT occupational code no. 689.686-022)[10]; *see also* Tr. 38. He found the pay loader job to comprise both unskilled and low semiskilled work based on plaintiff's testimony (Tr. 34-35). Tr. 17 ¶ 6. As to exertional level, the ALJ found in his discussion of plaintiff's ability to perform his past relevant work that the pay loader job was at the medium level, citing a disability report by plaintiff (Tr. 132, 133). Tr. 17 ¶ 6. Elsewhere, however, the ALJ alludes to the pay loader job as consisting of both medium and heavy work,[11] which is consistent with testimony by plaintiff (*see* Tr. 35). Tr. 16 ¶ 5. The court will treat this latter finding as controlling. The evidence noted constitutes substantial evidence supporting the ALJ's findings regarding the demands of plaintiff's past work.

Contrary to plaintiff's contentions, substantial evidence supports the determination that plaintiff had the RFC to perform these past jobs. One limitation plaintiff alleges is restriction on use of his right, dominant hand as a result of a crush injury to it in 1974 or 1975 requiring partial amputation of his right little finger. Tr. 14 ¶ 5; *see* Tr. 42. In rejecting this contention, the ALJ found:

---

[9] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

[10] The ALJ did not accept the vocational expert's testimony that the doffer job fell under DOT occupational code no. 689.686-058. *See* Tr. 42-43. The principal difference between that job and the job classification assigned by the ALJ is that it is at the heavy exertional level. *See* DOT occupational code no. 689.686-058. Substantial evidence, including plaintiff's testimony, supports the ALJ's occupational code designation. *See* Tr. 38.

[11] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. § 404.1567(d).

The claimant's hand injury occurred years ago. He continued to work without limitations well after his injury. No treating or examining physician has reported pain symptoms or functional limitations resulting from the claimant's hand injury.

Tr. 15 ¶ 5.

With respect to plaintiff's continuing to work after the hand injury, plaintiff testified that he lost the doffer job, not because of that injury (or any other physical or mental impairment), but because his employer went out of business and that he lost the pay loader job because of absenteeism. Tr. 35-36, 38. Plaintiff does not point to evidence showing that the impairment of his hand or other physical and mental impairments have deteriorated since he stopped working.

Further, Disability Determination Services ("DDS")[12] consulting examining physician Maqsood Ahmed, M.D. found in his report, dated 6 January 2009, that plaintiff could "perform dexterous hand movement without difficulty" (Tr. 209), as the ALJ noted (Tr. 15 ¶ 5). In their physical RFC assessments, dated 21 January 2009 (Tr. 218) and 14 May 2009 (Tr. 252), respectively, DDS nonexamining consulting physicians Margaret Parrish, M.D. and Janet Johnson-Hunter, M.D. found plaintiff to have no manipulative limitations. While in his 14 April 2009 report, DDS examining consulting physician Samuel Wesonga, M.D. rated plaintiff as having somewhat diminished grip strength in his right hand ("Handgrip 4/5 on the right"), which he did not relate to the accident (Tr. 244), he did not specify any restrictions on use of the right hand.

Plaintiff also alleges neck, back, and right arm pain resulting in substantial functional limitations. As the ALJ noted, however, there is evidence that plaintiff takes no prescription or nonprescription pain medication. Tr. 15 ¶ 5 (citing Tr. 179); *see* 20 C.F.R. § 404.1529(c)(3)

---

[12] DDS is a North Carolina state agency that makes decisions on applications for disability under the Social Security program. *See* N.C. Div. of Vocational Rehab. Serv., http://www.ncdhhs.gov/dvrs/pwd/dds.htm (last visited 24 June 2013).

(recognizing medications taken for symptoms as a factor in determining severity of an impairment). In addition, again as the ALJ found:

> The claimant underwent successful cervical laminectomy in January 2005, for posterior disc bulging and osteophyte at the C5-6 level (Exhibits lF, pg. 12 and 3F). A consulting physician who examined the claimant on January 6, 2009, reported localized tenderness in the cervical paraspinal muscles without muscle spasms and only slightly limited range of motion in the cervical spine. He noted that the claimant was able to raise his arms overhead and perform dextrous hand movements without difficulty (Exhibit 4F, pg 5).
>
> X-ray and examination of the claimant's lumbar spine are negative. He has no sensory, neurological or reflex deficits. Gait is normal. He is able to walk on his heels and toes, and squat and raise (Exhibits 4F, pg. 5 and 10F, pg. 2).

Tr. 15 ¶ 5. As with plaintiff's right hand injury, there is no medical evidence that any neck, back, or right arm pain prevented plaintiff from continuing in his jobs. This same evidence constitutes substantial evidence supporting the ALJ's rejection of Dr. Johnson-Hunter's opinion that plaintiff should be limited to only occasional climbing on ladders, rope, or scaffolds because of his spine surgery. *See* Tr. 251.

Although in their physical RFC assessments Dr. Parrish and Dr. Johnson-Hunter limited plaintiff to medium work (Tr. 216, 250), the ALJ afforded "[l]ittle weight" to his opinion, citing substantial evidence:

> There is no medical evidence to support a finding that the claimant is limited to lifting/carrying 25 pounds frequently and 50 pounds occasionally. Findings pertaining to the claimant's cervical spine are minimal. He returned to work after his cervical laminectomy and performed work at the medium and heavy exertional levels until he was terminated for excess absenteeism.

Tr. 16 ¶ 5.

Plaintiff points to the record of an office visit to his primary care provider stating that he was to do no lifting (Tr. 187), but that visit occurred in November 2004, over three years before his alleged onset of disability and after which he continued working as pay loader. Plaintiff also references the statement in Dr. Wesonga's report that he has trouble lifting anything over ten

pounds. Tr. 242. That statement, appearing in the history section of the report, is clearly plaintiff's own self-report of his lifting ability, not a finding by Dr. Wesonga. Notably, plaintiff did not directly challenge the ALJ's credibility analysis, which concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not fully credible. *See* Tr. 14-15 ¶ 5.

Plaintiff further contends that he lacks the stamina to perform the standing and walking required for even light work because of dizziness, shortness of breath, and chest pain on exertion. Again, though, substantial evidence supports the ALJ's determination to the contrary. The two nonexamining consulting physicians, Dr. Parrish and Dr. Johnson-Hunter, both found plaintiff able to walk and/or stand about six hours in an eight-hour workday. Tr. 216, 250.

Further, plaintiff on occasion denied any dizziness, shortness of breath, and chest pain, as noted by the ALJ. Tr. 15-16 ¶ 5 (citing Tr. 276, 278). While he did complain of dizziness at the examinations by Dr. Ahmed and Dr. Wesonga, neither physician described it as serious problem. (Tr., *e.g.*, 207, 209, 242, 245). Dr. Ahmed noted that the dizziness was "sometime" in nature. Tr. 207. Dr. Wesonga associated it with plaintiff's squatting down and rising too fast, noting that it "comes and goes," and that plaintiff takes no medication for it. Tr. 242, 245.

As to shortness of breath, both Dr. Ahmed and Dr. Wesonga noted that plaintiff was taking no medication for his alleged breathing problem. Tr. 209, 242. Dr. Wesonga also noted that the shortness of breath was only occasional. Tr. 242.

With respect to chest pain, there does not appear to be any medical evidence linking it to a debilitating condition. Dr. Ahmed opined that it "seemed to be more related to [plaintiff's] acid reflux." Tr. 209.

Plaintiff also alleges vision problems that limit his ability to work. But an examining ophthalmologist, Hashmat A. Chaudhry, M.D., found on 17 January 2009 that plaintiff's vision was correctable to 20/20. Tr. 212. Similarly, Dr. Parrish and Dr. Johnson-Hunter found plaintiff to have no visual limitations. Tr. 218, 252.

Substantial evidence supports the ALJ's determination that plaintiff has the intellectual capacity to do his past relevant work. Absent evidence of a change in a claimant's intellectual functioning, the claimant's IQ is assumed to be constant. *Luckey v. U.S. Dept. of Health and Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989). There is no evidence of a change here. Therefore, the fact that plaintiff had the intellectual capacity to perform his past relevant work substantiates that he currently has such capacity.

Moreover, as indicated, Mr. Radson, Dr. Cyr-McMillon, and Dr. Skoll all found plaintiff capable of performing SRRTs. Tr. 225, 239, 269. SRRTs are a subset of unskilled work. *See, e.g.*, *McClendon v. Astrue*, No. 1:10CV411, 2012 WL 13525, at *7 (M.D.N.C. 4 Jan. 2012) (mag. judge's recomm.), *adopted*, 2012 WL 1414327 (M.D.N.C. 24 Apr. 2012). Because the DOT classifies the job of doffer performed by plaintiff as unskilled, these opinions tend to substantiate that plaintiff had the intellectual capacity to perform it. The ALJ found the pay loader job to include both unskilled and low semi-skilled tasks. The psychological sources' opinions therefore tend to substantiate plaintiff's intellectual capacity to perform the unskilled tasks included in that job. They also provide support for plaintiff's intellectual capacity to perform the remaining tasks because, at the low semiskilled level, they are only marginally more complex than the unskilled tasks and other evidence otherwise substantiates that he can perform tasks at that level.

Dr. Cyr-McMillon and Dr. Skoll found, and plaintiff alleges, that he has moderate limitations in his ability to maintain social functioning. Tr. 237, 267. But substantial evidence cited by the ALJ shows to the contrary:

> These opinions are not supported by the evidence in its entirety. The claimant interacts appropriately during medical examinations. There is no evidence of difficulty dealing with the public when shopping and attending church. He is able to maintain an intimate relationship with a girlfriend. He engages in activities with his brother and visits with others by telephone.

Tr. 16 ¶ 5.

The court concludes that substantial evidence supports the ALJ's determination that plaintiff had the RFC to perform his past relevant work, including work at the heavy exertional level included in the job of pay loader. The court accordingly rejects plaintiff's challenge to this portion of the ALJ's decision.

## E.    ALJ's Nonapplication of Medical-Vocational Guideline 201.10 and 201.12

Plaintiff contends that the ALJ erred by not finding that a determination of disabled is directed for him pursuant to Medical-Vocational Guidelines[13] 201.10 and 201.12. Both guidelines are based on an RFC for sedentary work. The vocational factors for Guideline 201.10 are: closely approaching advanced age (age 50–54); limited or less education; and skilled or semiskilled previous work experience that is not transferable. Guideline 201.10. The vocational factors for Guideline 201.12 are: closely approaching advanced age; high school graduate or more, not providing for direct entry into skilled work; and unskilled previous work experience or

---

[13] The Medical–Vocational Guidelines or grids are a set of rules that direct a conclusion as to whether or not a claimant is disabled. *See generally* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200(a). They are grouped by RFC for sedentary, light, medium, and heavy or very heavy work, respectively. Within each such RFC grouping, the criteria applied are the vocational factors—namely, age, education, and previous work experience (*e.g.*, none, unskilled, semiskilled, skilled, transferability of skills).

no such experience. Guideline 201.12. The court finds no error in the ALJ's nonapplication of these Guidelines.

Application of the Guidelines occurs at step five of the sequential analysis and presumes that a claimant cannot do his past relevant work or has none. *See* 20 C.F.R. §§ 404.1520(g)(1), 404.1569; Guideline 200.00(a). Because the ALJ properly determined at step four that plaintiff could perform his past relevant work, the analysis ended at that step and step five was not reached. *See* 20 C.F.R. § 404.1520(a)(4); *Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012). Moreover, the ALJ properly found that plaintiff had the RFC to perform work at higher than the sedentary exertional level. Thus, Guidelines 201.10 and 201.12 would be inapplicable irrespective of the inapplicability of the Guidelines as a whole. The court accordingly rejects plaintiff's contention regarding the ALJ's nonapplication of Guidelines 201.10 and 201.12.

**F.     ALJ's Development of the Record**

Plaintiff contends that the ALJ failed to adequately develop the record in this case regarding his mental impairments. The argument is baseless.

Plaintiff complains, for instance, that the ALJ did not question him at the hearing regarding his alleged mental impairments. But plaintiff's own attorney questioned him in detail about his school background, reading ability, and activities of daily living. Tr. 25-26, 33-34. The ALJ discusses all these matters in his decision, including plaintiff's hearing testimony about them. *See* Tr. 14 ¶ 5; 15 ¶ 5; 16 ¶ 5.

As indicated, the record also contains the psychological RFC assessments of plaintiff by two nonexamining consulting psychologists, Dr. Cyr-McMillon and Dr. Skoll, whose reports provide a thorough summary of the findings of Mr. Radson, who performed a clinical psychological examination of plaintiff. The ALJ expressly addressed the findings of all these

sources, including the finding that plaintiff had moderate limitations in his ability to maintain social functioning. *See* Tr. 16 ¶ 5. The ALJ also, of course, made the finding at step two that plaintiff had borderline intellectual functioning and the findings required by application of the special technique for mental impairments. *See* 20 C.F.R. 404.1520a; Tr. 16-17 ¶ 5 (finding plaintiff to have mild restrictions in activities of daily living and maintaining social functioning; moderate restrictions in maintaining concentration, persistence, or pace; and no episodes of decompensation).

The court concludes that the record before the ALJ was sufficiently developed to enable him to make a proper decision on whether plaintiff was disabled, including but not limited to the nature and severity of his mental impairments and any resulting functional limitations. The court accordingly rejects this challenge to the ALJ's decision.

## III.    CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, as supplemented by the Appeals Council, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 21) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 19) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 8 July 2013 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual

findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 24th day of June 2013.

_____
James E. Gates
United States Magistrate Judge